Nos. 2022-1147, 2022-1149, 2022-1150, 2022-1151

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

AMGEN INC.,

*Plaintiff-Cross-Appellant*

v.

SANDOZ INC. AND ZYDUS PHARMACEUTICALS (USA) INC.,

*Defendants-Appellants*

MANKIND PHARMA LTD., TORRENT PHARMACEUTICALS LTD., GLENMARK PHARMACEUTICALS LIMITED, MACLEODS PHARMACEUTICALS LTD., MSN LABORATORIES PRIVATE LTD., ACTAVIS LLC, PRINSTON PHARMACEUTICAL INC., EMCURE PHARMACEUTICALS LTD., HERITAGE PHARMACEUTICALS INC., AUROBINDO PHARMA LTD., AUROBINDO PHARMA USA, INC., ANNORA PHARMA PRIVATE LIMITED, HETERO USA, INC., CIPLA LIMITED, ALKEM LABORATORIES LTD., DR. REDDY'S LABORATORIES, INC., DR. REDDY'S LABORATORIES, LTD., AMNEAL PHARMACEUTICALS LLC, PHARMASCIENCE INC.,

*Defendants*

Appeals from the U.S. District Court for the District of New Jersey in Nos. 18-cv-11026, 18-cv-11267, 18-cv-11269, and 19-cv-18806 (MAS)

## REPLY BRIEF FOR PLAINTIFF-CROSS-APPELLANT AMGEN INC.

STEVEN J. HOROWITZ
PAUL J. ROGERSON
JULIA G. TABAT
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

JOSHUA J. FOUGERE
SIDLEY AUSTIN LLP
1501 K. Street NW
Washington, DC 20005
(202) 736-8000

SUE WANG
SIDLEY AUSTIN LLP
555 California St.,
Suite 2000
San Francisco, CA 94104
(415) 772-1200

*Counsel for Plaintiff-Cross-Appellant Amgen Inc.*

*[Additional counsel listed inside front cover]*

STUART L. WATT
WENDY A. WHITEFORD
ERIC M. AGOVINO
CHRISTINA NICHOLE GIFFORD
DENNIS J. SMITH
GREGORY BONIFIELD
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320
(805) 447-1000

ALEXA HANSEN
COVINGTON & BURLING LLP
415 Mission Street
San Francisco, CA 94105
(415) 591-7035

GEORGE FRANK PAPPAS
JEFFREY B. ELIKAN
MICHAEL N. KENNEDY
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000

*Counsel for Plaintiff-Cross-Appellant Amgen Inc.*

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Cross-Appellant Amgen Inc., Steven J.

Horowitz, certifies that the following information is accurate and

complete to the best of his knowledge:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

    Amgen Inc.

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

    Amgen Inc.: None

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. Fed. Cir. R. 47.4(a)(3).

    Amgen Inc.: None

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

    Gibbons P.C.: Charles H. Chevalier, Christine A. Gaddis, J. Brugh Lower, Rachel S. Johnston

    Covington & Burling LLP: Jay Alexander, Antonio J. Carvalho, Kevin B. Collins, David S. Denuyl, Priscilla Dodson, Joseph Hykan, Daniel H. Lee, Philip S. May, Priscilla N.A. Nyankson,

Christopher N. Sipes, Alexander Trzeciak, Hangcheng "Robert" Zhou

5.    **Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).

None.

6.    **Organizational Victims and Bankruptcy Cases.**  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

Not Applicable.

August 12, 2022                              /s/ *Steven J. Horowitz*
                                             STEVEN J. HOROWITZ
                                             SIDLEY AUSTIN LLP
                                             One South Dearborn
                                             Chicago, IL 60603
                                             (312) 853-7000

                                             *Counsel for Amgen Inc.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................... 1

ARGUMENT ........................................................................ 4

I.    The District Court Failed to Address Motivation to Achieve the Invention As Claimed. .................................................... 4

A.    The District Court Analyzed Only the Invention's "Gist," not the Specifically Claimed Schedule. .............. 4

B.    The District Court Failed to Make Express, Predicate Findings About Motivation to Achieve the Claimed Schedule. ...................................................................... 7

1.    Defendants mischaracterize the error at issue and ignore binding case law. .............................. 9

2.    Defendants' reliance on purported "concessions" do not establish motivation................................ 11

3.    Defendants' attempts on appeal to backfill their failures of proof below fall short. ........................ 12

II.    Neither Routine Optimization Nor Obvious-to-Try Theories Can Remedy the District Court's Motivation-to-Combine Errors................................................................................ 16

A.    Defendants' Routine Optimization Arguments Do Not Remedy the District Court's Errors............................ 17

B.    The District Court's Obvious-to-Try Statements Do Not Remedy the District Court's Errors............................ 20

III.    The District Court's Obviousness Determination For the '541 Patent Should Be Reversed Outright. .................................. 24

CONCLUSION .................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acorda Therapeutics, Inc. v. Roxane Laboratories, Inc.*,
    903 F.3d 1310 (Fed. Cir. 2018) ......................................................... 20

*Belden Inc. v. Ber-Tek LLC*,
    805 F.3d 1064 (Fed. Cir. 2015) .................................................... 17, 18

*In re Copaxone Consolidated Cases*,
    906 F.3d 1013 (Fed. Cir. 2018) ......................................................... 19

*Cubist Pharmaceuticals, Inc. v. Hospira, Inc.*,
    805 F.3d 1112 (Fed. Cir. 2015) ......................................................... 19

*In re Cyclobenzaprine Hydrochloride Extended-Release
    Capsule Pat. Litig.*,
    676 F.3d 1063 (Fed. Cir. 2012) .................................................... 21, 23

*Endo Pharms. Sols., Inc. v. Custopharm Inc.*,
    894 F.3d 1374 (Fed. Cir. 2018) ................................................ 7, 11, 16

*Hoffman-La Roche Inc. v. Apotex Inc.*,
    748 F.3d 1326 (Fed. Cir. 2014) ............................................. 19, 23, 24

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014) ......................................................... 10

*Knoll Pharm. Co. v. Teva Pharms. USA, Inc.*,
    367 F.3d 1381 (Fed. Cir. 2004) ......................................................... 15

*KSR Int'l Co. v. Teleflex, Inc.*,
    550 U.S. 398 (2007) ............................................................................. 10

*Merck & Co., Inc. v. Biocraft Laboratories, Inc.*,
    874 F.2d 804 (Fed. Cir. 1989) ........................................................... 19

*Pfizer, Inc. v. Apotex, Inc.*,
    480 F.3d 1348 (Fed. Cir. 2007) ........................................................... 9

*Shire LLC v. Amneal Pharms., LLC,*
     802 F.3d 1301 (Fed. Cir. 2015) ........................................................ 25

*In re Stepan Co.,*
     868 F.3d 1342 (Fed. Cir. 2017) ........................................................ 18

*Stone Basket Innovations, LLC v. Cook Med. LLC,*
     892 F.3d 1175 (Fed. Cir. 2018) ........................................................ 25

*TQ Delta, LLC v. Cisco Sys., Inc.,*
     942 F.3d 1352 (Fed. Cir. 2019) .......................................................... 9

*UCB, Inc. v. Watson Laby's Inc.,*
     927 F.3d 1272 (Fed. Cir. 2019) ........................................................ 23

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.,*
     721 F.2d 1540 (Fed. Cir. 1983) .......................................................... 5

# INTRODUCTION

The district court erred in finding that Defendants had met their burden of proving the claims of the '541 patent to be invalid for obviousness. Defendants failed to show that the skilled artisan would have been motivated to modify the prior-art apremilast dosing schedules to arrive at a six-day dose-titration schedule with features completely absent from the prior art, like a single dose on the first day of the schedule or asymmetric dosing.

The '541 patent claims a specific, narrow invention. It leaves those in the field free—once the '638 composition patent expires—to use apremilast to treat psoriasis, and to initiate such treatment with any of a dizzying array of unpatented dose-titration schedules (including those taught in Papp or Schett), or to rely on individualized, feedback-driven dosing. The patent only protects the particular schedule specifically claimed by its inventor, with a novel mix of symmetric and asymmetric dosing leading to a 30-mg, twice-daily maintenance dose on day six. Accordingly, the patent can be readily avoided, including, for example, by extending the titration period well beyond six days—which is exactly what Defendants' expert has done for years in her own clinical practice.

The patent's specificity has important consequences for Defendants' validity challenge. To prove that the claimed invention would have been obvious, Defendants were required to demonstrate that the skilled artisan would have been motivated to arrive at exactly what was claimed—not merely that the skilled artisan would have reason to extend one existing schedule (Papp) or shorten another (Schett). But there is no evidence that the skilled artisan would have been motivated to make several of the specific choices reflected in the claims, let alone all of them together. So Defendants took some shortcuts, leading the district court to error.

Defendants have now had the chance on appeal to identify evidence presented at trial to support a motivation to pursue the invention as claimed. Instead, they have taken more shortcuts. Although they insist, for example, that the district court did not improperly reduce the invention to its general gist when assessing motivation, Defendants' own brief does *the exact same thing*—routinely failing to confront or even acknowledge the full-featured dose-titration schedule *as claimed*. (*See, e.g.*, Br. 23, 32.) In a similar vein, Defendants contend that the district court's cursory motivation-to-

combine analysis was adequate, but they do so only by rewriting the prior-art teachings, the claimed invention, and the district court's opinion. Defendants' revisionism is completely unsupported.

Defendants' brief is also internally inconsistent. Defendants contend that the claimed schedule would have been an obvious solution to alleged problems with existing dose-titration schedules. They say that the skilled artisan would have been motivated to modify those existing five- and eight-day schedules to arrive at the very specific six-day schedule claimed in the patent, all to improve tolerability, and with the expectation that the modification would *succeed*. At the same time, however, Defendants insist that this supposedly obvious solution is also an obvious "failure" that "provides little to no benefit to patients." (Br. 17.)

The truth is that the claimed dose-titration schedule provides significant benefits, both to patients and to the doctors facing the challenge of dose titration across the highly diverse population of patients suffering from psoriasis. (Appx6496(1756:17–25); Appx6498–6499(1758:11–1759:13); Appx6503(1763:17–1764:24).) The only reason Defendants are here challenging the validity of the patent is that they

have chosen to infringe the claimed schedule.  (Appx2169; Appx2175.)
Having made that choice, Defendants needed to prove at trial that the
claimed schedule, with all of its specific limitations, would have been
obvious.  They did not do so.

The judgment as to the '541 patent should be reversed.

**ARGUMENT**

## I.    The District Court Failed to Address Motivation to Achieve the Invention As Claimed.

### A.    The District Court Analyzed Only the Invention's "Gist," not the Specifically Claimed Schedule.

The district court's motivation-to-combine analysis never
confronted the actual claimed schedule, with all of its particularities
and narrow limitations.  (Amgen Br. 79–82.)  Instead, the district court
(and Defendants) regularly characterized the '541 patent's dosing
schedule in simplified terms, such as "a twice-daily, six-day, fixed
apremilast dosing schedule, initiating treatment at 10 mg and
increasing toward a 30 mg target dose in 10 mg increments."  (Appx112;
*see also* Br. 11, 23, 30, 32.)  But such high-level generalities gloss over
the invention's specifics, including days of asymmetric dosing.  They are
also incorrect as to those specifics: the first day of the schedule has a
single dose in the morning, so the schedule cannot even accurately be

described as a "twice-daily" schedule. Because there is "no legally recognizable or protected 'essential,' 'gist,' or 'heart' of the invention," *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983) (citation omitted), and because the "gist" is exactly what the district court analyzed, the court erred. (Amgen Br. 79–82.)

In their response brief, Defendants reimagine Amgen's arguments and the district court's opinion. What they do not do, however, is identify any evidence supporting a motivation to arrive at the invention *as claimed*, with all of its limitations.

To start, Defendants contend that Amgen's "primary complaint" is that the district court did not "sufficiently explain the basis for its ruling" and did not "discuss every piece of evidence." (Br. 28–29.) That is incorrect. In truth, Amgen recognized that the district court did not need to "recite every limitation each time it referred to the invention." (Amgen Br. 82.) The primary problem with the court's opinion was not a failure to "discuss every"—or even *any*—"piece of evidence" (Br. 29), but a failure to "assess whether Defendants had established by clear and convincing evidence that the invention *as claimed*—with each of its limitations—would have been obvious." (Amgen Br. 82.)

Defendants point to two aspects of the district court's opinion to argue that the district court did not in fact analyze the invention's "gist." First, Defendants say that the district court "understood" the limitations of the claimed invention because the court "quot[ed] the claim language and illustrat[ed] the regimen in a table" somewhere "in its opinion." (Br. 29 (citing Appx107).) That establishes nothing. The district court merely quoted the claims in an introductory background section (Appx107), but that cannot excuse later erasing the specific claim limitations in its operative obviousness analysis (Appx111–114). Second, Defendants note that the term "asymmetric dosing" "appears nowhere in the claims." (Br. 29.) That also establishes nothing: although the '541 patent does not use the phrase, there is no dispute that the asserted claims in fact *claim* an asymmetric dosing schedule, unlike the two prior-art schedules on which Defendants rely. (*See* Appx10638(31:3–26).)

Unable to identify anything in the district court's opinion analyzing all of the specific claim limitations, Defendants repeat the court's errors—collapsing the claimed schedule into an over-generalized summary. Defendants describe the invention, for example, as

"increasing the dose [from the Papp schedule] by 10mg every day, rather than 20mg every two days—resulting in a dose-titration regimen of six days rather than five." (Br. 23.)  Or they call it a "one-step-at-a-time regimen of starting at 10mg and increasing by 10mg per day." (*Id.* at 32.)  Or they insist that the only "difference" with Papp is "that the '541 patent's dose titration increases the dose by 10mg per day instead of 20mg every two days." (*Id.* at 11, 25.)  Defendants' inaccurate descriptions overlook, among other things, the claimed schedule's asymmetric dosing and single-dose first day.  Like the district court, none of Defendants' descriptions captures the dosing "schedule in the manner claimed." *Endo Pharms. Sols., Inc. v. Custopharm Inc.*, 894 F.3d 1374, 1386 (Fed. Cir. 2018).

## B.    The District Court Failed to Make Express, Predicate Findings About Motivation to Achieve the Claimed Schedule.

Having recast the claimed schedule as its high-level "gist," the district court then failed to make necessary, express findings that the skilled artisan would have been motivated to achieve the specific dose-titration schedule claimed.  (Amgen Br. 82–86.)  The one-paragraph-long discussion of the issue did not address why the skilled artisan

– 7 –

would have been motivated to use certain features, like asymmetric dosing. (*Id.* at 83–84.) Nor did the district court answer the critical question of whether the skilled artisan would have been motivated to modify Papp and Schett to move to six days when those references reported adequate tolerability at five and eight days. (*Id.* at 84–86.) Either those prior-art schedules already addressed tolerability—in which case there would be no motivation to modify them at all—or, as Defendants contend, they did not—in which case it was Defendants' burden to prove that the skilled artisan concerned about tolerability would have been motivated to *shorten* Schett's eight-day schedule, rather than follow the commonsense convention and go *beyond* eight days.

Defendants' responses again distort Amgen's arguments, the prior art, and the district court's opinion. Rather than engage Amgen's actual motivation arguments, Defendants falsely claim that the claimed dosing schedule "would naturally result" from modifying the prior-art schedules. Their arguments are all meritless.

>    1.    *Defendants mischaracterize the error at issue and ignore binding case law.*

First, Defendants accuse Amgen of arguing that "the district court failed to make findings on motivation." (Br. 30.)  That is inaccurate. Amgen explicitly recognized the district court's brief motivation discussion (Appx114), which Defendants merely rehash on appeal (Br. 30).  But Amgen went on to explain why the district court's "findings on motivation" *do not suffice*.  (*See* Amgen Br. 83–86.)  Simply stating that the district court "made express findings on motivation," as Defendants do (Br. 30), does not confront these defects or Amgen's arguments.

Second, Defendants contend that "[t]here is substantial evidence in the record that a POSA would have been motivated to modify Papp's dose-titration regimen to further reduce apremilast's side effects" and that there was "plenty of evidence to support the court's findings." (Br. 24–25, 30.)  Even setting aside the fact that "substantial evidence" is not the relevant standard of review in an appeal from a bench trial, *e.g.*, *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007), those statements say nothing about a motivation to achieve the specific dosing schedule in the specific "manner claimed," *TQ Delta, LLC v.*

*Cisco Sys., Inc.*, 942 F.3d 1352, 1359 (Fed. Cir. 2019). Nor do Defendants point to anything in the district court's opinion that does so.

Defendants nevertheless dismiss as "inapplicable" case law holding that a motivation-to-combine analysis should be "explicit" and not "conclusory," because Amgen's case supposedly "address[ed] an expert's testimony on obviousness, not a district court's opinion." (Br. 32 (discussing *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327 (Fed. Cir. 2014).) Defendants' argument fails. For one thing, *InTouch* quotes *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418 (2007), for the proposition that the motivation analysis from "*a court … should be made explicit.*" 751 F.3d at 1347 (emphasis added). For another, the sum-total of Defendants' proclaimed "evidence" in support of motivation comes *from an expert* (Dr. Gilmore) and her "staircase" testimony about "reducing the dose escalation in Papp from 20mg to 10mg." (Br. 24–25, 31 (citing Appx5460–5462(861:22–863:7).) That conclusory testimony, however, erases claim limitations and oversimplifies the claimed schedule, which is impermissible, as *InTouch* teaches.

2.    *Defendants' reliance on purported "concessions" do not establish motivation.*

Defendants fare no better with their assertion that two alleged "concessions" from Amgen's clinical expert, Dr. Alexis, are "fatal." (Br. 26.) One is Dr. Alexis's testimony that it was "within the skill" of doctors to "individually titrate" any "drugs that require dose titration." (Appx6553(1813:5–25).) That statement—concerning what the skilled artisan *could do* for an individual patient—is consistent with the prevailing practice to individualize dosing schedules to the needs of each patient and is inconsistent with the claimed invention. (Appx6495–6496(1775:2–1776:2); Appx6505–6512(1765:15–1772:11).) It is clearly not an "admission" that the skilled artisan would have been *motivated* to combine Papp, Schett, and Pathan to achieve the one-size-fits-all dosing schedule for psoriasis patients "in the manner claimed." *Endo Pharms.*, 894 F.3d at 1386.

The other purported "admission" was the double-negative statement that Dr. Alexis "would not expect" that extending Papp's schedule by one day "would not have efficacy." (Appx6558(1848:8–25).) The testimony does not even relate to Defendants' motivation theory, which has everything to do with *tolerability*, not efficacy. And

– 11 –

Defendants admit, as they must, that this testimony addresses Defendants' theory of reasonable expectation of success, not motivation to combine.  (Br. 26; Appx113.)

> ### 3.    *Defendants' attempts on appeal to backfill their failures of proof below fall short.*

Defendants try to backfill the district court's opinion further by addressing one feature of the claimed schedule that the district court failed to substantiate—namely, a motivation to choose six days in particular.  (Amgen Br. 84–86.)  To do so, Defendants argue both that a six-day schedule is merely the "natural[] result" of "reducing the dose escalation in Papp from 20mg to 10mg" (Br. 30–32) and that the prior art supports a "five-to-eight-day range" but not more (*id.* at 5, 23, 31). Neither point is correct.

Defendants' "natural result" argument rests on unsupported assumptions.  It is certainly true that, mathematically speaking, it would take six days to go from 10 mg to 60 mg when increasing by 10 mg each day.  But there is nothing in the prior art, nothing in the district court's opinion, and nothing in the record—besides Dr. Gilmore's uncorroborated testimony—that supports a motivation to increase the dose every single day for six consecutive days or to pursue

any of the other claimed features (*see* Amgen Br. 80–81). To the contrary, both Papp and Schett teach *holding* each new dose for two or more days before increasing it again (which would "natural[ly] result" in at least a 12-day schedule, assuming there was motivation to initiate titration at 10 mg/day). (Appx110–111.) Moreover, declaring a six-day schedule the "natural result" of a particular change to the prior art does not show a motivation to make that particular change. It is simply hindsight reasoning, working backwards from what is claimed.

Defendants are likewise wrong to try to limit the relevant motivation evidence to a "five-to-eight-day period." (Br. 5, 23, 31.) Defendants characterize the prior art as teaching a "range" of "five-to-eight days" and they argue that six days "fell squarely within" it. (*Id.* at 31.) But Papp and Schett—the prior-art schedules to which Defendants refer—are two discrete schedules used in clinical studies (not a range), and each has a specified length (of five *or* eight days). Neither taught that five days (Papp) was a lower boundary, or that eight days (Schett) was an upper boundary, for the time period to adjust the dose. Indeed, Schett only reached a *40*-mg daily maintenance dose, rather than the claimed 60-mg daily maintenance dose (Appx16494), which suggests

that following Schett to arrive at 60 mg would take *longer* than eight days. Schett also expressly permits adjustment after eight days—specifically, a "one-time dosage reduction to 20 mg daily" to address tolerability. (Appx16494; *see also* Appx16499 (reporting on reductions).)

More broadly, if the skilled artisan thought existing schedules were insufficient to mitigate dose-dependent side effects, the natural solution would have been to extend well *beyond* eight days, which is exactly what Defendants' expert, Dr. Gilmore, did. (Appx5508–5511(909:19–912:3), 5514(915:5–9).) Indeed, Papp reports that adverse reactions to treatment came in the first *two weeks*, meaning that tolerability issues arose well beyond its five-day (or Schett's eight-day) titration period. (Appx16375.) And there was no testimony that Schett's eight-day titration was any more tolerable than what was achieved with Papp's five-day titration. In fact, the adverse events reported in Papp and Schett were similar in kind (headache, nausea, diarrhea, and vomiting) and frequency (5% and 5.8%, respectively). (Appx16375; Appx16498–16499.)

The commonsense extension beyond eight days would have been consistent with the standard titration practice of individualized,

feedback-driven titration for oral psoriasis drugs, which often took several months to reach a full dose. (Amgen Br. 19–20.) For example, the '536 patent—described by Defendants as "key" prior art (Appx5430–5431(831:20–832:3))—specifically taught individualized titration for apremilast. (Appx10607(13:45–64); Appx6506–6508(1766:18–1768:25).) And far from lacking "clinical" significance (*contra* Br. 5–8, 24, 30–31 & n.3), such individualized titration was specifically directed by the FDA-approved labels (which in turn are supported by clinical trials) for the three most common orally-administered drugs used to treat psoriasis at the time. (Appx6494–6498(1754:9–1758:10); Appx6506(1765:15–1771:21).)

Dr. Gilmore's decision to titrate well beyond Schett's eight days fundamentally undermines Defendants' position that Schett somehow enacted an eight-day limit to titration of apremilast, so it is no wonder that Defendants seek to downplay Dr. Gilmore's post-issuance clinical experience. (Br. 16–17, 31.) But "[e]vidence developed after the patent grant is not excluded from consideration . . . in support of patent validity." *Knoll Pharm. Co. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1385 (Fed. Cir. 2004).

In the end, Defendants "needed to affirmatively demonstrate that a skilled artisan would have been motivated to" achieve the specific claimed schedule with all of its limitations "despite no clear evidence of" side-effect problems that would result from following the prior-art schedules. *Endo Pharms.*, 894 F.3d at 1380–81.  (*See also* Appx16371 (Papp); Appx16492 (Schett).)  They failed to do so, and nothing in their response brief, or in their half-hearted response to *Endo Pharmaceuticals* (Br. 32), changes that bottom line.  Likewise, the absence of necessary and express findings by the district court on motivation to achieve the claimed dosing schedule is an error that cannot be remedied by Defendants' arguments on appeal.

## II.    Neither Routine Optimization Nor Obvious-to-Try Theories Can Remedy the District Court's Motivation-to-Combine Errors.

Seeking to mitigate the various shortcomings on the motivation-to-combine issue, Defendants try to change the subject by making arguments about routine optimization and obvious-to-try.  Defendants' arguments fall short.

## A.    Defendants' Routine Optimization Arguments Do Not Remedy the District Court's Errors.

Defendants repeatedly try to reformulate the motivation issue into a question about "routine optimization" or "predictable variation."  (Br. 22, 23, 26–27.)  Defendants acknowledge that such questions concern "reasonable expectation of success," or whether the claimed invention was "within the skill of a POSA"—not motivation, which is what this case is about.  (*Id.* at 26.)  Yet Defendants go on to erroneously argue that these distinct issues are somehow "fatal to Amgen's position" on motivation to combine, and that these issues alone render the claimed schedule "not patentable."  (*Id.* at 26–27.)

As an initial matter, this Court has squarely recognized that assertions of "predictable variation" or "routine optimization" do not erase the motivation-to-combine inquiry.  Defendants feature *KSR*'s statement that "a predictable variation [of the prior art] § 103 likely bars its patentability" (Br. 22, 26 (quoting *KSR*, 550 U.S. at 417)), but that passage, according to this Court, "*does not establish* that it suffices for obviousness that a variation of the prior art would predictably work," *Belden Inc. v. Ber-Tek LLC*, 805 F.3d 1064, 1075 (Fed. Cir. 2015) (emphasis added).  Instead, obviousness still "requires consideration of

whether, in light of factors such as 'design incentives and other market forces,' the hypothetical skilled artisan *would recognize the potential benefits and pursue the variation*." *Id.* (emphasis added).  By the same token, "[s]tating that a person of ordinary skill in the art would have arrived at the claimed invention through routine optimization" still requires "an explanation as to *why* it would have been routine optimization to arrive at the claimed invention." *In re Stepan Co.*, 868 F.3d 1342, 1346 (Fed. Cir. 2017).

The upshot is straightforward:  while "predictable variation" or "routine optimization" may be relevant to the obviousness inquiry, mere incantations of these concepts are no substitute for establishing motivation by clear and convincing evidence.  As Defendants themselves recognize (Br. 26), the standards they recite generally address what the skilled artisan "*could have made*," whereas Defendants also needed to show that the skilled artisan "*would have been motivated to make* the combinations or modifications of prior art to arrive at the claimed invention." *Belden*, 805 F.3d at 1073 (emphasis added).

Finally, none of Defendants' cases (Br. 26–27) support the proposition that claims of "routine optimization" or "predictable variation" can make up for a failure of proof on motivation. Defendants' lead case, *Merck & Co., Inc. v. Biocraft Laboratories, Inc.*, 874 F.2d 804 (Fed. Cir. 1989), was about the "obvious to try" theory addressed below. (*Infra* at 20–24.) So was *In re Copaxone Consolidated Cases*, in which the "prior art focused on two critical variables, . . . and *provided clear direction* as to the choices likely to be successful"—direction that is missing from the prior art here. 906 F.3d 1013, 1025 (Fed. Cir. 2018) (emphasis added). And *Hoffman-La Roche Inc. v. Apotex Inc.*, where the prior art also "provided substantial guidance" for one of the two key dosing limitations and "specifically taught" the other, was also an "obvious to try" case. 748 F.3d 1326, 1330–32 (Fed. Cir. 2014).

Defendants' remaining two cases do not help them either. The dispute in *Cubist Pharmaceuticals, Inc. v. Hospira, Inc.*, was about reasonable expectation of success, not motivation to combine. 805 F.3d 1112, 1124 (Fed. Cir. 2015). The prior art again "clearly pointed" to the claimed doses and, despite its "predictive" nature, gave "rise to a reasonable expectation that dosages . . . would be effective." *Id.* And

*Acorda Therapeutics, Inc. v. Roxane Laboratories, Inc.* affirmed the district court's findings, supported by "expert testimony," that "a person of ordinary skill in the art *would have been motivated to pursue*" each limitation of the claimed schedule. 903 F.3d 1310, 1331 (Fed. Cir. 2018) (emphasis added). Those are exactly the findings that are missing here.

## B.    The District Court's Obvious-to-Try Statements Do Not Remedy the District Court's Errors.

The district court's occasional references to this Court's obvious-to-try precedent were also misplaced. (Amgen Br. 86–89.) That line of cases requires, among other things, that the skilled artisan would have reason to select the route to the claimed dosing schedule and that there were only a small, finite number of potential schedules. (*Id.*) The district court *said* that the universe of possibilities was "'finite'" but cited no evidence to support that conclusion, while ignoring detailed contrary (and uncontroverted) evidence from Dr. Alexis. (*Id.*)

Defendants twice urge the Court not to reach this issue (Br. 33–35), and their assorted points misrepresent the record and ignore the burden of proof.

Defendants state that the district court "did not credit" or "rejected" Dr. Alexis's testimony that there were more than 70,000

possible dosing schedules available to try. (Br. 18, 33.) That description is misleading. Defendants imply that the district court discussed Dr. Alexis's testimony and explicitly "rejected" or decided not to "credit" it. The truth is that the district court did not address Dr. Alexis's testimony on this point at all—even though it was the *only* evidence about the universe of possible options to "try" when dosing apremilast. (*See* Appx112–114.)

Defendants' sleight-of-hand also reveals a more fundamental problem with their position: obviousness is *their* burden, not Amgen's. *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1078 (Fed. Cir. 2012). Defendants presented *no* evidence to show that the universe of potential schedules was small, finite, or discrete, and the district court cited none. "The absence of such testimony suggests that skilled artisans would not have encountered finite, small, or easily traversed options." *Id.* at 1072–73. Defendants cannot fill this hole in their case by falsely claiming that the district court "did not credit" Dr. Alexis's testimony.

Furthermore, Defendants maintain that Dr. Alexis's 70,000-possibilities testimony is "untenable" because there was "no evidence

that doses [of apremilast] were available or administered in 5, 15, or 25mg increments." (Br. 24, 29 & n.2, 33–34.) But Defendants' argument for limiting the dosage options depends on ignoring the teachings of the '536 patent, which their own expert called a "key" reference. (Appx5430–5431(831:20–832:3).) The '536 patent teaches that the "daily dose" of apremilast "may be administered in 5 mg, 10 mg, 15 mg, 20 mg, 25 mg, 50 mg, or 100 mg dosage forms." (Appx10607(13:54–59).) Given that, it is also unsurprising that Dr. Alexis did not "concede[] at trial" that "there is no data in the art showing that any patient was ever administered 5, 15, or 25mg doses." (Br. 34 (citing Appx6558(1818:1–8).) In fact, Dr. Alexis made clear that he *was* "aware [of such data]," and he pointed to a "published" Phase 1 "dose ranging study." (Appx6558(1818:1–16).)

Moreover, there is no reason why, if the skilled artisan were motivated to design a novel schedule to avoid the dose-dependent side effects associated with Papp and Schett, the skilled artisan would have been limited to a universe of dosing amounts that had already been "administered." Defendants have never explained what "data" in Papp or Schett relate to the suitability of the particular dosage forms used,

rather than to, for example, the overall amounts and dosing schedules. And if the goal was (as Defendants urge) to take smaller "steps" to mitigate dose-dependent side effects (*e.g.*, Br. 25), it makes perfect sense to start at 5 mg, for example, rather than jumping immediately to 10 mg.

Finally, Defendants have no answer to their failure to meet the legal standards for an obvious-to-try theory. An obvious-to-try theory requires some "'indication of which parameters' to alter or 'which of many possible choices [would be] likely to be successful.'" (Amgen Br. 88 (discussing *Cyclobenzaprine*, 676 F.3d at 1071 and *UCB, Inc. v. Watson Laby's Inc.*, 927 F.3d 1272, 1288 (Fed. Cir. 2019)).)

Faced with a standard they cannot meet, Defendants, like the district court, lean heavily on *Hoffman-La Roche*, and that reliance is revealing. (Br. 33–34.) As Amgen has explained (*see* Amgen Br. 88–89), *Hoffman-La Roche* concerned adjusting two parameters in ways that were "specifically taught" by the prior art and that could be selected from a "very limited set" of possibilities. 748 F.3d at 1330–32. Here, in contrast, no prior-art reference teaches a six-day dosing schedule, asymmetric dosing, or mixing once-a-day and twice-a-day dosing, and

there is no evidence that the interlocking complexities of those variables yields a "very limited set" of options.  (Amgen Br. 88–89.)  Like the district court's opinion, Defendants' response brief provides no answer to the distinctions with *Hoffman-La Roche* that Amgen identified.  Defendants' silence speaks volumes.

## III.    The District Court's Obviousness Determination For the '541 Patent Should Be Reversed Outright.

Defendants did not meet their "added burden" of proving invalidity, and there is no need to remand for "further fact-finding."  (Amgen Br. 89–91 (citing *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1306–07 (Fed. Cir. 2015) and *Tris Pharma, Inc. v. Actavis Lab'ys FL, Inc.*, 755 F. App'x 983, 991 (Fed. Cir. 2019)).)  The record simply cannot support a finding that the skilled artisan would have been motivated to pursue a six-day schedule, much less one with all of the '541 patent's claimed features.  (*Id.*)  Apart from incorporating their flawed arguments discussed above, Defendants' only response is that the prosecution history does not support increasing their burden of proof.  (Br. 36.)  Defendants are wrong on the law and the facts.

As for the law, Defendants say that "there is no added burden" because "[t]he examiner only allowed the claims after Celgene

submitted evidence of purported unexpected results." (*Id.*)  This Court's precedent does not support Defendants' citation-free assertion.  Instead, the enhanced burden applies whenever the same prior art is "listed on the face" of the patent and was considered during prosecution.  *Shire*, 802 F.3d at 1307; *see also Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1179–80 (Fed. Cir. 2018) (similar).  That rule, which does not look to the examiner's reasons for allowance, is plainly satisfied here.  (Appx10620–10622.)

As for the facts, Defendants completely misstate what the prosecution history shows.  Defendants assert that the '541 patent was allowed over Papp, Schett, and the '536 patent based solely on Celgene's submission regarding "unexpected results."  (Br. 13–15, 36.)  But Celgene's last substantive submission (before the examiner withdrew the relevant obviousness rejection without explanation) made three independent arguments: (1) the examiner's obviousness analysis employed "improper[] hindsight reconstruction," (2) Celgene had amended the claim language from "comprising" to "consisting of" to overcome the prior art, and (3) even "assuming *arguendo*" that neither of those arguments sufficed, the claimed schedule yielded unexpected

results.  (Appx12254–12255.)  Contrary to Defendants' assertions, there
is no evidence that Celgene's conditional assertion of unexpected results
led the examiner to allow the claims.  In fact, the examiner described
each of Celgene's arguments as "moot" based on new and different
grounds of rejection (Appx12538), and ultimately did not mention
unexpected results in the reasons for allowance (Appx12685).

Worse, Defendants build their erroneous arguments about the file
history from evidence that was excluded at trial.  Specifically,
Defendants lean heavily on testimony from their expert, Dr.
Scharfstein—pointing to his testimony seven times in their brief.  (Br.
14–15.)  Indeed, Defendants even criticize Amgen for failing to rebut Dr.
Scharfstein's testimony but do not once mention that *his testimony was
excluded in its entirety*.  (Appx45.)  Defendants do not argue that the
district court erred in excluding the testimony they rely on.

Of course, Dr. Scharfstein's testimony was excluded because
Amgen chose to focus its trial presentation on Defendants' failure to
prove motivation to combine (which is dispositive as to non-
obviousness), rather than present extensive statistical evidence and
testimony on objective indicia of non-obviousness (which is not

dispositive).  (*See* Appx45; Appx4089 n.33.)  Defendants failed to introduce evidence to explain why the skilled artisan would have been motivated to make the specific choices required to achieve the claimed dose-titration method having particular features not found in any of Defendants' prior art.  Particularly where the Patent Office considered the very same prior art, such a failure of proof justifies reversal of the judgment as to the '541 patent.

## CONCLUSION

For the foregoing reasons, and those provided in Amgen's principal brief, the Court should reverse—or, at a minimum, vacate—the judgment with respect to the '541 patent.

August 12, 2022

Respectfully submitted,

_/s/ Steven J. Horowitz_

STUART L. WATT
WENDY A. WHITEFORD
ERIC M. AGOVINO
CHRISTINA NICHOLE GIFFORD
DENNIS J. SMITH
GREGORY BONIFIELD
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320
(805) 447-1000

GEORGE FRANK PAPPAS
JEFFREY B. ELIKAN
MICHAEL N. KENNEDY
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000

ALEXA HANSEN
COVINGTON & BURLING LLP
415 Mission Street
San Francisco, CA 94105
(415) 591-7035

STEVEN J. HOROWITZ
PAUL J. ROGERSON
JULIA G. TABAT
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

JOSHUA J. FOUGERE
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

SUE WANG
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
(415) 772-1200

*Counsel for Plaintiff-Cross-Appellant Amgen Inc.*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Circuit Rule 28.1(b)(2). The brief contains 5,036 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.


August 12, 2022                    /s/ *Steven J. Horowitz*
                                   STEVEN J. HOROWITZ
                                   SIDLEY AUSTIN LLP
                                   One South Dearborn
                                   Chicago, IL 60603
                                   (312) 853-7000

                                   *Counsel for Amgen Inc.*